James Edward SMITH *v.* STATE of Arkansas

CR 94-398                                    883 S.W.2d 837

Supreme Court of Arkansas
Opinion delivered October 3, 1994

*William R. Simpson, Jr.*, Public Defender, by: *C. Joseph Cordi, Jr.*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Acting Deputy Att'y Gen., for appellee.

TOM GLAZE, Justice. James Edward Smith was convicted of rape, kidnapping and breaking or entering, and he received a cumulative sentence of forty years imprisonment. On appeal, he challenges the sufficiency of the evidence regarding his kidnapping conviction, and further argues that the court's application of Arkansas's new bifurcation sentencing laws, Acts 535 and 551 of 1993 (codified at Ark. Code Ann. §§ 5-4-103 (Repl. 1993) and 16-97-101—103 (Supp. 1993) violated his federal and state constitutional protections against *ex-post facto* laws.

First, we dispose of Smith's constitutional argument because the argument made here is not the one presented to the trial court below. Before trial began in this matter, the parties gathered in the court's chamber where Smith's counsel stated the following:

> The last thing I would object to, and this is January 4, 1994, and I think the new number is 16-97-101, which states to bifurcate the trial, and I think that we would object for the record concerning the law regarding constitutionality matters and due process under the Arkansas Amendment rights and the 14th Amendment of the U.S. Constitution. My personal opinion is that, and I think that specifically in regard to this statute, I think that it is very difficult to look at this procedural change as anything other than simply a knee-jerk reaction because it has a sunset provision that the Legislature says if this doesn't work we can shut it down and try something else, and it is just playing games with the rights of the defendant at this point. I think it refocuses a criminal trial to a sentencing situation.

The deputy prosecutor responded to the defense counsel's foregoing remarks, stating § 16-97-101 was constitutional, and

the state was ready to proceed with a bifurcated trial. The trial judge stated that he disagreed with defense counsel's statement and dismissed counsel's motion to declare the statute unconstitutional. At this point, the judge asked Smith's counsel, "[Y]our objection is in the form of what?" and counsel stated that, for purposes of appeal, he would make a formal motion in writing and forward it to the Attorney General.

Apparently, after the jury returned its verdicts of guilty, the court went into recess at 4:21 p.m., and defense counsel filed a motion with the circuit clerk's office at 4:26 p.m. The trial court resumed trial for the sentencing phase at 4:35 p.m.; at this time, defense counsel announced that he had filed a motion challenging the constitutionality of Act 535 of 1993 [§ 16-97-101]. The trial judge responded, saying, "[L]et the record reflect it has."

In this appeal, Smith points to nowhere in the record where the trial court actually saw, or read defense counsel's motion, much less where it ruled on the motion's contents. The written motion contains several constitutional arguments, including the *ex post facto* issue raised in this review, that were not a part of Smith's oral motion set out above, which the trial court ruled on prior to trial. Specifically, Smith's written motion also includes Sixth and Eighth Amendment arguments, and specific due process and equal protection issues not mentioned on the record at trial.

Where an appellant's argument at trial did not apprise the trial court of the arguments made on appeal, this court will not reach the arguments. *Hewitt* v. *State*, 317 Ark. 362, 877 S.W.2d 926 (1994). Further, a party cannot change the basis of his argument on appeal. *Id.* Even constitutional arguments can be waived on appeal. *Green* v. *State*, 313 Ark. 87, 852 S.W.2d 110 (1993). Thus, because Smith failed to object to the bifurcation of his trial on *ex post facto* grounds and obtain a ruling on that issue, he has waived that argument on appeal.

Smith next argues the state's evidence was insufficient to support his conviction for kidnapping because the proof did not show that he restrained the victim beyond that required for the rape with which he was charged and convicted. Smith's contention is without merit.

To prove kidnapping, the state had to show that Smith

restrained the victim, without her consent, so as to interfere substantially with her liberty with the purpose of inflicting physical injury upon her or of engaging in sexual intercourse, deviate sexual activity, or sexual contact with her. Ark. Code Ann. § 5-11-102(a)(4) (Repl. 1993). Initially, we point out that the Criminal Code speaks in terms of restraint rather than removal. Consequently, it reaches a greater variety of conduct, since restraint can be accomplished without any removal whatever. *See* original commentary to § 5-11-102, Ark. Crim. Code Ann. with Commentaries at 404 (1993). It is the restraining of the victim beyond the de minimus restraints accompanying the crime of rape that is determinative. *Summerlin* v. *State*, 296 Ark. 347, 756 S.W.2d 908 (1988). In other words, it is only when the restraint exceeds that normally incidental to the crime of rape that the rapist is also subject to prosecution for kidnapping. *Id.* The purpose of the restraint may be inferred from circumstantial evidence. *Aaron* v. *State*, 312 Ark. 19, 846 S.W.2d 655 (1993).

In the case at bar, the evidence shows that Smith entered the victim's house around 1:00 a.m. while she slept, held a gun on her as he removed her clothing, threatened to kill her if she screamed or yelled, and raped her while holding the gun under her chin. Instead of leaving, Smith sat at the edge of the victim's bed while the victim moved away from him. Smith proceeded to talk to the victim for two hours, and even though the victim did not indicate he held the gun on her during this time, she knew he still had it. After the two-hour period, Smith told the victim he intended to rape her again, and he did so while he held the gun to her head. Even though the gun later proved to be a toy, the victim testified:

> He would not let me leave. If I was to leave my bedroom, I would have to go through the living room and to the first door. And there's two locks on the first door and two locks on the bottom door, and I did not know if either one of those were locked.

> \*    \*    \*

> [I]f I had known that the gun was not real from the beginning, I would have fought and . . . would have kicked. The reason that I did not is that I did not know whether it

was real or not. I was going to do whatever he told me because of that gun.

\* \* \*

He told me that the gun was fake after the second time.

She also testified she thought Smith was crazy, and she told him lies about herself in the hope that he would let her go.

The evidence is clear that Smith raped the victim and then continued to restrain her freedom for two hours under the threat of using the gun. After raping the victim the second time, the victim stated she became claustrophobic, could not stand being confined any longer, and took her chances and left. The fact that the gun was a toy, and thus harmless, or that the victim finally left on her volition without harm is irrelevant. During the two-hour period, the victim was in fear of her life and her freedom to leave was substantially impaired by Smith's threats. This is substantial evidence of restraint beyond that necessary to commit the act of rape.

For the reasons above, we affirm Smith's convictions.