Allen Bruce WOODS, Jr. *v.* STATE of Arkansas

CR 95-798                                    916 S.W.2d 728

Supreme Court of Arkansas
Opinion delivered March 4, 1996

606

*Christopher C. Mercer, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This appeal is from a judg-

ment of conviction on two counts of aggravated assault. Appellant Allen Bruce Woods urges two points for reversal. He first maintains that the trial court erred in permitting a Little Rock Police Detective to testify that holes in a house were made by shotgun blasts. Secondly, he urges that the trial court committed error in sentencing him because he gave no written reasons for a substantial departure from the sentencing grid, as required by State law. Neither point has merit, and we affirm the judgment.

The facts in this case are garnered from the testimony of the prosecution witnesses. Lillie McMullan Scroggins testified that she owns a two-story brick house on Fair Park Boulevard in Little Rock. On June 9, 1994, Tanyia McMullan, Lillie Scroggins's daughter, and Tanyia's college friend, April Sherrill, were at the house on Fair Park Boulevard. Lillie Scroggins was on a cordless telephone to Veronica McMullan, another daughter, when she observed a blue Cadillac pull up in her yard with five males in the car. Woods, whom she had seen before, came to the door and asked for Tanyia. She told him that Tanyia was not there. Woods returned to the car which left. Lillie Scroggins was still on the telephone with Veronica McMullan, and she told Veronica McMullan that Woods had come to the house. Lillie Scroggins then called 911, and Veronica McMullan came over to the house.

Lillie Scroggins further testified that Tanyia had returned to her house and was outside talking when the blue Cadillac returned. Tanyia started running toward the house. Lillie Scroggins saw Woods get out of the back of the car, open the trunk, get a gun, and put it together. She testified that another youth had a bat in his hand. She described the gun as long and black. As she was running, Tanyia tripped on the steps to the house, and Veronica McMullan and Lillie Scroggins pulled her into the house.[1] The driver, who had the bat, began kicking the door. The women pushed a sofa behind the door, and he was unable to kick it open. Lillie Scroggins added that the boy with the bat hit the windows and that she heard what sounded like a gun going off. She did not see anyone firing a gun. Tanyia called

---

[1] Lillie Scroggins testified that she had a disability which necessitated her use of a walker but that she still assisted Tanyia in getting into the house.

911, and, later, a police officer arrived. Lillie Scroggins testified that the windows and screen in the dining room were broken, that the lining of the drapes was torn, and that glass was everywhere in the house. The front door was also cracked, and the sofa was torn. Woods was the only person that she saw with a gun.

Veronica McMullan, Tanyia McMullan, and April Sherrill basically confirmed Lillie Scroggins's rendition of what happened. Veronica McMullan added that she actually saw Woods firing the shotgun at the house. Tanyia testified that Woods had either pointed the gun at her or the house.

Woods was initially charged with one count of a terroristic act and five counts of aggravated assault. The State initially nolle prossed one count of aggravated assault, and the trial court directed a verdict on two others. The terroristic act charge and the aggravated assault charges with regard to Lillie Scroggins and Tanyia McMullan went to the jury. The jury found Woods guilty of the two aggravated assault charges, which are Class D felonies, and acquitted Woods of committing a terroristic act. Following the sentencing phase, the jurors could not arrive at a verdict, and the jury was dismissed. The State and defendant agreed that the trial court would fix the sentence, and a presentence report was requested.

A sentencing hearing was held. According to the sentencing grid, Woods had a grade of level three for seriousness of the crime and zero for criminal history. Under the grid, commitment to a regional punishment facility with alternative sanctions was provided. Despite this, the trial court sentenced him to six years on each conviction and fined him $10,000 on each conviction, for a total sentence of 12 years and $20,000. Woods describes this sentence as 2 1/2 times what the presumptive sentence was. The exact presumptive sentence alluded to is not provided by Woods. (The statutory penalty for a Class D felony is up to six years. Ark. Code Ann. § 5-4-401 (Repl. 1993).) On the day that the judgment and commitment form was entered, the trial court filed a standardized Departure Form and circled the numbers beside the following two aggravating circumstances as reasons for enhancing punishment more than 5 percent above the sentencing grid:

2. Offender knew victim vulnerable due to extreme youth, advanced age, disability or ill health.[2]

. . . .

8. Offense was committed in a manner that exposed risk of injury to others.

Woods first contends that it was reversible error under Ark. R. Crim. P. 17.1 for the State not to disclose the anticipated shotgun testimony by Detective Lawrence Welborn prior to trial. Woods had filed a motion for discovery and, in part, requested the names, addresses, and the substance of their testimony.[3] The response by the State had been that it has an "open file" policy. Detective Welborn's name was in the file, but defense counsel had not talked to him.

Prior to the detective's testimony at trial, defense counsel objected to any "physical evidence" of the shotgun blast. The State answered that it had no physical evidence to introduce and this colloquy ensued:

THE COURT: All right, sir. Is the State planning on producing any physical evidence that was not given to the Defense?

STATE: No physical evidence, Your Honor.

THE COURT: Okay. You did give him the name of this witness in advance?

STATE: Yes. sir, I did.

THE COURT: What's your objection, sir?

DEFENSE COUNSEL: Well, I'll probably cross examine him. If he's going to testify to gunshot marks and things then it would just be his memory. Do you have enough memory since you're not intending to produce any

---

[2] It is somewhat unclear whether the trial court circled number 1 or number 2, but it appears the court circled number 2.

[3] Substance of testimony by *witnesses* is not required under Rule 17.1. *Holloway* v. *State*, 310 Ark. 473, 837 S.W.2d 464 (1992); *Cox* v. *State*, 36 Ark. App. 173, 820 S.W.2d 471 (1991). We do not reach this issue, however, for reasons stated in this opinion.

physical evidence?

STATE: Your Honor, with all due respect, there is nothing in the police report about the gunshot bullet holes; however, because I spoke with this officer beforehand and discussed his observations with him, he told me that he did see them.

THE COURT: Mr. Mercer, if you were given this witness' name in advance of trial, what he saw, heard and experienced most certainly is going to be admissible.

DEFENSE COUNSEL: All right.

Direct examination of Detective Welborn by the State followed, and he testified that he was trained at the State Police Academy on the use of a shotgun. He stated that he was trained on the size of the barrel and the pattern a shotgun produces with different ammunition. He added that he was familiar with the type of hole that a shotgun makes when fired and that he had seen the results of over 100 shotgun blasts. He opined that the holes at the McMullan house were shotgun holes. No objection was made to this testimony by defense counsel.

■ The State argues that an objection to Detective Welborn's opinion testimony was not made and, thus, the issue was not preserved for appeal. We agree. Defense counsel made his objection on the basis of *physical* evidence of the shotgun blasts, which would encompass embedded pellets retrieved from the house and the like. No objection was made to the detective's giving his opinion of what made the holes in the house. Indeed, defense counsel stated that he would probably cross-examine the detective about his memory concerning "gunshot marks and things." An objection to physical evidence is different from an objection to observations and opinions. We have held numerous times that a defendant cannot change his argument on appeal. *See, e.g., Spears* v. *State*, 321 Ark. 504, 905 S.W.2d 828 (1995); *Smith* v. *State*, 318 Ark. 142, 883 S.W.2d 837 (1994). We, accordingly will not address the merits of this point.

Woods next contends that the trial court erred in not following statutory procedure in departing from the sentencing grid in his sentence. The pertinent parts of the statute follow:

(a)(1) Effective January 1, 1994, the trial court may deviate within a five percent (5%) range below or above the presumptive sentence without providing a written justification.

(2)(A) For the trial court to depart beyond the five percent (5%) range below or above the presumptive sentence, written justification shall be given for the most serious offense if the sentences are run concurrently or on each offense if the sentences are run consecutively, specifying the reasons for such departure.

. . . .

(3) A copy of the written reasons shall be attached to the commitment and another copy forwarded to the Arkansas Sentencing Commission.

. . . .

(c)(1) When a sentence is imposed after January 1, 1994, which is outside the presumptive range and which is not accompanied by written reasons for the departure, an offender shall be considered for any discretionary release applicable under the law as if he had received the presumptive sentence, and the transfer or releasing authority may review, grant, or deny transfer or release based on any eligibility established by the presumptive sentence term.

Ark. Code Ann. §§ 16-90-804(a)(1), (a)(2)(A), (a)(3), and (c)(1) (Supp. 1995). Section 16-90-804(d)(2) continues with a list of aggravating factors that might cause an upward departure from the presumptive sentence, including the two circumstances cited by the trial court in the instant case.

■ We agree with the State's contention that any defect in the Departure Form should have first been raised to the trial court for consideration and possible correction. The Departure Form is in the record and according to § 16-90-804(a)(3) was required to be attached to the judgment and commitment form. We have no doubt that defense counsel had either received the form or easily could have availed himself of it and, hence, had ample time to broach any deficiency to the trial court.

■ Nonetheless, we choose to address the merits of the

issue raised because of its importance to the bench and bar. The trial court in this case circled the numbers of the apposite aggravating circumstances rather than wrote out reasons for the enhancement. We conclude that the General Assembly did not intend by § 16-90-804 that the trial court necessarily write out the reasons for departure in longhand but only that the reasons be written. Here, they were in writing, and the trial court circled the numbers of those aggravating circumstances that comprised its justifications. We hold that this procedure was appropriate under the statute and did not constitute error.

Affirmed.