Cite as 2025 Ark. 148

# SUPREME COURT OF ARKANSAS

No. CR–24–589

| | | |
|---|---|---|
| NATHANIEL FORT | | Opinion Delivered: October 9, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46CR-23-88] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE BRENT HALTOM, JUDGE |
| | APPELLEE | |
| | | AFFIRMED. |

**BARBARA W. WEBB, Justice**

Appellant Nathaniel Fort was convicted of capital murder for his role in the shooting death of Aaron Bruce. He was sentenced to life imprisonment. For reversal, Fort argues that (1) the circuit court erred by admitting Bruce's autopsy report without proper attestation; (2) the circuit court deprived Fort of his right of allocution; and (3) the prosecutor's short report of circumstances failed to comply with Arkansas Code Annotated section 12-27-113. We affirm.

I. *Background*

Fort and his brother, Tarus Walker, went to Bruce's apartment on the morning of December 25, 2022. Bruce had allegedly struck Walker's child, and Walker went armed with an AK-47 rifle to confront him. Fort was armed with two .40-caliber handguns. Shortly before the shooting, Walker took a video at Bruce's apartment showing him banging

on the door with his AK-47. Detective Aaron Lewis identified Fort as the individual seen in the video standing next to Walker.

After hearing Walker and Fort at his door, Bruce left through the rear entrance of his apartment and went to the nearby apartment of his cousin, Patrick Ross. Ross told Bruce to come with him to discuss the matter with Walker. As Ross approached Walker and Fort, he asked the two men to put their guns down and talk to him. Walker refused and shot Bruce, who fell to the ground. Fort then fired multiple shots into Bruce as he lay on the ground. The two men left the apartment complex in a black Hyundai, which matched the description of the car Fort's mother drove.

Following the shooting, Tyshae Solomon called 911 and attempted to render first aid. Texarkana police and medical personnel arrived soon thereafter. Despite their efforts to resuscitate Bruce, he died at the scene.

Police found three .40-caliber shell casings near Bruce's body. Three expended .40-caliber bullets were recovered—two from Bruce's clothing, and one from the ground near the body. These bullets had mushroomed, indicating that they were fired after Bruce fell, as they went through his body and flattened against the asphalt. Fort was subsequently arrested and charged with capital murder.

At the conclusion of the first day of trial, the prosecuting attorney informed the circuit court that Dr. Adam Craig, a medical examiner with the Arkansas State Crime Laboratory, who had performed Bruce's autopsy, had tested positive for COVID-19 and would be unavailable to testify the following day. Fort argued that Dr. Craig needed to testify; otherwise, it would constitute a violation of the Confrontation Clause. However,

2

the parties agreed that, if necessary, the autopsy report could be admitted through one of the other medical examiners who reviewed Dr. Craig's report.

Nevertheless, the prosecuting attorney moved the following day to admit the autopsy report without a medical examiner, asserting that the report was self-authenticating under Arkansas Code Annotated section 12-12-313. Fort objected, arguing that the report could not be admitted without a supporting witness. The circuit court overruled the objection and admitted the report into evidence, finding that Fort had waived his right under the statute to have a medical examiner attest to the report because he failed to subpoena anyone from the state crime lab or file a notice of intent to cross-examine. The autopsy report was entered into evidence, which concluded that the manner of Bruce's death was multiple gunshot wounds.

Fort was subsequently convicted of capital murder and sentenced to life imprisonment. On appeal, Fort raises three arguments: (1) the circuit court erred by admitting Bruce's autopsy report; (2) the circuit court erred by denying his right of allocution; and (3) the prosecutor's short report of circumstances does not comply with the governing statute.

## II. *Discussion*

### A. Autopsy Report

Fort first argues that the circuit court erred by admitting the autopsy report. He contends that the report was not admissible without proper attestation, as required under section 12-12-313(a), thereby depriving him of his right to cross-examine under the

3

Confrontation Clause. The State concedes error; however, it argues the error was harmless beyond a reasonable doubt.

We will not reverse a circuit court's evidentiary errors absent a showing of prejudice. *Lewis v. State*, 2023 Ark. 12. The erroneous admission of hearsay does not justify reversal when the error was harmless. *Proctor v. State*, 349 Ark. 648, 79 S.W.3d 370 (2002). An error is harmless when the evidence of guilt is overwhelming, and the error is slight. *Lawson v. State*, 2024 Ark. 143, 697 S.W.3d 529.

Likewise, Confrontation Clause violations also receive a harmless-error analysis. *McNeil-Lewis v. State*, 2023 Ark. 54, at 8, 661 S.W.3d 195, 200. That analysis includes several factors: (i) whether the statement was important to the prosecution's case; (ii) whether the statement was cumulative; (iii) whether other testimony corroborated or contradicted the statement; (iv) whether cross-examination was otherwise extensive; and (v) whether the prosecution's case was strong overall. *Id.*

Section 12-12-313 governs the admission of Arkansas State Crime Laboratory records. It provides in pertinent part:

> (a) The records and reports of autopsies, evidence analyses, drug analyses, and any investigations made by the State Crime Laboratory under the authority of this subchapter shall be received as competent evidence as to the matters contained therein in the courts of this state subject to the applicable rules of criminal procedure or civil procedure *when duly attested to by the Director of the State Crime Laboratory or his or her assistants, associates, or deputies.*

Ark. Code Ann. § 12-12-312(a) (Repl. 2016) (emphasis added). Thus, reports generated by the state crime lab will be admissible when attested to by the lab's director or his or her assistants.

4

We have defined the term "attest" as "bear[ing] witness to, certify; declare the truth of, in words or in writing, esp. affirm in an official capacity; to attest the truth of a statement." *Nard v. State*, 304 Ark. 159, 162, 801 S.W.2d 634, 636 (1990) (quoting *The Random House Dictionary of the English Language* 133 (2d ed. 1983)). The purpose of this requirement is to allow for the admission of reports that would otherwise be hearsay; therefore, the mere signature of the examiner who created the report is inadequate. *Id.* As such, the signatures on Bruce's autopsy report did not satisfy the attestation requirement under section 12-12-312(a). We conclude that the circuit court abused its discretion by admitting the autopsy report into evidence.

Fort argues that he was prejudiced by the circuit court's error as he was unable to cross-examine the medical examiner regarding the autopsy findings. Because both he and Walker shot Bruce, Fort asserts the jury could only speculate as to which gunshot caused Bruce's death. Fort suggests that a shot fired by Walker could have killed Bruce, rendering him solely responsible for the murder.

Despite Fort's contention, it was inconsequential which bullet killed Bruce. That is because Fort was convicted under a theory of accomplice liability. Under such theory, there is no distinction between principals on the one hand and accomplices on the other, insofar as criminal liability is concerned. *Price v. State*, 2019 Ark. 323, 588 S.W.3d 1. When two persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Cook v. State*, 350 Ark. 398, 86 S.W.3d 916 (2002). One cannot disclaim accomplice liability simply because he did not personally take part in every act that went to make up the crime as a whole. *Hatcher v. State*, 2011 Ark. 325. Thus, it is

5

unimportant which bullet may have killed Bruce, as Fort remains criminally liable due to his involvement in the murder.

We find that the admission of the autopsy report was harmless, as it was undisputed that Bruce died of multiple gunshot wounds. *See Sauerwin v. State*, 363 Ark. 324, 329, 214 S.W.3d 266, 270 (2005) (finding no prejudice from a medical examiner's testimony regarding an autopsy report prepared by another examiner when the cause of death was not disputed). Moreover, evidence of Fort's guilt was overwhelming. A video recorded by Walker showed him armed with an AK-47 rifle outside Bruce's apartment shortly before the shooting. Detective Lewis identified Fort as the man standing next to Walker in the video. Ross testified that he witnessed Walker and an individual—later identified as Fort— shoot Bruce. Ross stated that Fort was armed with two .40-caliber handguns. Officers testified that Bruce died at the scene from gunshot wounds. And Detective Eric Winters testified that .40-caliber casings and expended 40-caliber bullets were found near Bruce's body and inside his clothing.

In sum, the overwhelming evidence demonstrates that Walker and Fort acted in concert to kill Bruce. The cause of death was undisputed and cumulative of witness testimony. As such, the autopsy report was nonessential to the State's case. Accordingly, we conclude that the circuit court's error in admitting the report was harmless.[1]

### B. Allocution

---

[1]Even assuming, arguendo, that the admission of the autopsy report violated the Confrontation Clause, this error was harmless beyond a reasonable doubt given the overwhelming evidence and the report's lack of import on the State's case. *See McNeil-Lewis*, 2023 Ark. 54, at 8, 661 S.W.3d at 200.

Fort next argues that he was denied his right of allocution under Arkansas Code Annotated section 16-90-106(b) (Repl. 2016), which provides that when a defendant appears for judgment, "[h]e or she must be asked if he or she has any legal cause to show why judgment should not be pronounced against him or her." The circuit court's failure to allow a defendant the opportunity for allocution is reversible error. *Goff v. State*, 341 Ark. 567, 19 S.W.3d 579 (2000). However, we will not reverse for failure to allow allocution when there has been no objection to the failure below. *Id.*

Here, the record makes clear that Fort was not offered the opportunity for allocution. But the record also demonstrates that Fort made no objection to the circuit court's error. Fort's argument is therefore unpreserved.

## C.  Prosecutor's Short Report of Circumstances

For his final argument, Fort argues that the prosecutor's short report of circumstances does not comply with Arkansas Code Annotated section 12-27-113(c), which provides as follows:

> (c)(1) When a prisoner is committed to the Division of Correction, his or her commitment papers must include a report on the circumstances attending the offense, particularly such circumstances as tend to aggravate or extenuate the offense, which report shall be kept in the permanent file of such prisoner.
>
> (2) The report shall be prepared by the prosecutor or deputy prosecutor who represented the state in the proceeding against the prisoner. The report shall be approved by the sentencing judge.

Fort contends that the report was never approved by the sentencing judge, nor did it include aggravating and extenuating circumstances.

An objection to any form or report required by law to be attached to, or filed with, the sentencing order must first be addressed in the circuit court to be preserved for appeal.

7

*See Woods v. State*, 323 Ark. 605, 611, 916 S.W.2d 728, 731 (1996) (holding "that any defect in the Departure Form[,]" which was required by law to be attached to the judgment and commitment form, "should have first been raised to the trial court for consideration and possible correction"). As Fort concedes, he did not object to the prosecutor's report below, yet he argues that it is difficult to preserve an objection to the report because it is typically filed after proceedings have concluded. However, Fort had thirty days after the entry of judgment to file a motion to correct the prosecutor's report. *See* Ark. R. Crim. P. 33.3. Consequently, Fort's failure to raise an objection in the circuit court precludes our review on appeal.

III. *Rule 4-3(a) Review*

In compliance with Arkansas Supreme Court Rule 4-3(a), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Fort. No prejudicial error has been found.

Affirmed.

WOOD and BRONNI, JJ., concur.

**NICHOLAS J. BRONNI, Justice, concurring.** I join the bulk of the majority's analysis and its disposition of this case. But I write separately to underscore that the state evidentiary and confrontation-clause harmless-error inquiries are different. The former asks whether the error was harmless; the latter asks whether the error was harmless beyond a reasonable doubt. The majority mentions both standards. Yet it treats the confrontation-clause inquiry like a handmaiden of the first. I'd examine them separately, and in so doing, I'd affirm.

Nathaniel Fort makes two arguments related to the admission of Aaron Bruce's autopsy report. First, he says admitting that report violated a state law requiring "attest[ation] . . . by the Director of the State Crime Laboratory or his or her assistants, associates, or deputies" for "records and reports of autopsies" are "received as competent evidence." Ark. Code Ann. § 12-12-313 (Supp. 2023). Second, he argues that admitting that report without the preparer's testimony violated the Sixth Amendment's Confrontation Clause. The majority agrees with Fort's first argument, and it assumes he's right about the second. I agree with that approach. I also agree that the state law error was harmless and that any confrontation-clause error was harmless beyond a reasonable doubt.

But rather than relegate the confrontation-clause error to a footnote that references the state evidentiary analysis, I'd confront that claim head-on and clearly apply the relevant legal standard. That standard requires us to "assum[e] that the damaging potential of the cross-examination were fully realized" and asks whether we "might nonetheless say that the error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). To make that determination, the Court correctly notes, we consider "a host of factors," including "the importance of the witness' testimony," the cumulative nature of the testimony, supporting evidence, "the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.*

Applying that standard, this isn't a hard case. Fort argues that through cross-examination of the autopsy report's preparer, he might have shown that he didn't fire the specific bullet that killed Bruce. But even assuming that's true, it wouldn't have made a difference because Fort was convicted under an accomplice theory of liability and, as such,

9

the State didn't need to show that he fired a specific bullet. It only had to prove that Fort "attempt[ed] to aid the other person in planning or engaging in the conduct causing the particular result." Ark. Code Ann. § 5-2-403(b)(2) (Repl. 2024). It did that when it proved Fort shot Bruce, and cross-examining the autopsy report's preparer about which bullet ultimately killed Bruce wouldn't have demonstrated otherwise. So even assuming the autopsy report's admission violated the Confrontation Clause, any error was, as the majority says, harmless beyond a reasonable doubt. I'd simply make clear the inquiries are separate and treat them that way—rather than relegating the constitutional analysis to a passing footnote.

WOOD, J., joins.

*Tim Cullen*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.