Mildred SPEARS *v.* STATE of Arkansas

CR 94-1389                                     905 S.W.2d 828

Supreme Court of Arkansas
Opinion delivered September 11, 1995

*McCullough Law Firm*, by: *R.S. McCullough*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Joseph V. Svoboda*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. A jury found appellant Mildred Spears guilty of capital murder and conspiracy to commit capital murder. The trial court sentenced her to life imprisonment without parole for the capital murder. We affirm the judgment of conviction.

Blytheville police were summoned to the Chickasaw Courts apartments at 1:14 a.m., November 9, 1993, where they found Vernon Gray's corpse lying outside Bernita Webb's apartment. Gray, who was appellant's live-in companion, had been shot twice in the head. Appellant, who was inside Bernita Webb's apartment, had heard the two shots and saw her companion's body on the ground outside the apartment, and told the police that she and Gray had come to Blytheville from Milwaukee, Wisconsin, and that someone had been threatening him since their arrival. She stated that immediately before the murder she and Gray walked out of Webb's apartment to get some clothes from their car when someone stopped Gray and asked if they knew each other. Gray said they had met at the Top Spot night club. She stated that she went back into Webb's apartment and heard the sound of the two gunshots.

Later that same morning appellant gave the first of two additional statements in which she admitted that she had contracted to have Gray shot. In the first statement she said that she and Gray lived with their child and another child she had by a prior marriage and that he had abused all of them over a two-and-a-half year period, and the abuse was so serious it caused her to lose custody of the children. She stated that on one occasion Gray shot her, and as a result she was forced to go to a women's shelter. She said that he took her money, once beating her because of a dispute over fifty cents, and that he took her car from her. She stated that he would not allow her to leave.

Appellant told police that she had been thinking about "having something done" to Gray during the seven months that the children had been in foster care. She stated that a woman in Milwaukee named Janice Thompson gave her the phone number of someone in Blytheville and that she could call that person if she was serious about having something done to Gray. Appellant told the police she finally made the call after enduring additional abuse, and a man named Jackie answered. She stated they agreed that Jackie would hurt Gray in exchange for the drugs that Gray would have on his person. She said that she did not "necessarily" want him killed, just for Jackie to "do something to him" because she was tired of the abuse.

Appellant told police that Jackie was supposed to have "done

it" on Monday night, November 8th, but when nothing happened by 10:00 p.m., she called Jackie. He told her he would be there at midnight. She said that she left Webb's apartment at 12:10 a.m. to pick up her son, and when she returned nothing had happened. She asked Gray to go to the car with her to get some clothes. She said that she did this because it was the last chance for anything to happen, since she and Gray were to leave for Wisconsin the next morning. She said she and Gray walked out to the car, got the clothes, and as they were walking back to the apartment, a man approached them and asked Gray if they knew each other. Appellant left the two of them, went inside the apartment, and then heard two gunshots. When she looked out the window, she saw Gray lying on the ground.

Appellant made an additional statement on November 10 at 12:50 p.m. This time she said that her friend Bernita Webb actually contacted her cousin and he killed Gray. Appellant said that she told Webb that she wanted Gray "paralyzed" so that he could not continue to abuse her and the children. She said that she had agreed to pay the man one thousand dollars and the statement about a person named Janice in Milwaukee giving her a phone number was false. Appellant said there had been two foiled attempts to shoot Gray, rather than one, as she had previously stated. She said she arranged with Jackie to shoot Gray because she was tired of the physical abuse and tired of Gray taking her money and other property.

Tapes of both statements were played to the jury over appellant's objection. The basis of the objection was that the statements by appellant contained statements made by Jackie Jones and Bernita Webb and those statements were hearsay. The trial court overruled the objection since the statements were made by co-conspirators. Jones and Webb were also charged with Gray's murder.

Richard Razor testified that appellant also approached him about shooting Gray, but that he refused to do it.

Angela Redd, Jackie Jones's girlfriend, who also lives at the Chickasaw Courts, testified that Jones came to her apartment at about 2 a.m. on November 9. Willie May Young, owner of the Top Spot night club, testified that Jones worked there as a disc jockey.

Appellant made motions for a directed verdict on the charges of capital murder and conspiracy to commit capital murder. She argued that: (1) there was no proof she intended to have Gray killed; therefore, there was insufficient evidence to sustain a conviction for capital murder or conspiracy to commit capital murder; and (2) there was no corroborating evidence for her confession.

The trial court denied the motions. In addressing appellant's argument that there was no proof that she intended to have Gray killed, the court ruled that her statement that she did not want him "necessarily killed" was open to different interpretations and therefore should be submitted to the jury. On the one hand, the court reasoned, she could have meant that she did not want him killed, but on the other hand, she could have meant that if getting him killed was the only way to get the job done, then it was permissible to kill him. The trial court additionally found that there was strong circumstantial evidence that appellant wanted Gray killed since she came with him from Milwaukee to Blytheville, contacted the killer in Blytheville to have him attacked, and then contacted the killer either two or three times, depending on which statement was believed, to make sure he completed the job, and also the proof showed that the killer showed up at the agreed-upon time and twice shot Gray in the head. The trial court further observed that appellant said that she had been trying to get away from Gray for months, contacted the gunman when she could not get away, and then got Gray to go out to the car where the gunman intercepted them and twice shot him in the head.

█ █ On appeal, appellant continues to argue that the State's proof does not show that she "necessarily" intended to have Gray killed. The trial court's ruling was correct that, since the statement was open to different interpretations, a directed verdict was improper. In addition, the State's other evidence constituted substantial evidence from which the jury could find the requisite intent without resorting to speculation or conjecture. *See Davis* v. *State*, 317 Ark. 592, 879 S.W.2d 439 (1994). Intent is seldom capable of proof by direct evidence; it usually must be inferred by the circumstances of the killing. *Akbar* v. *State*, 315 Ark. 627, 869 S.W.2d 706 (1994). The intent necessary for murder may be inferred from the type of the weapon used, the manner of its use,

and the nature, extent, and location of the wounds. *Williams* v. *State*, 304 Ark. 509, 804 S.W.2d 346 (1991); *Garza* v. *State*, 293 Ark. 175, 735 S.W.2d 702 (1987). In addition, one is presumed to intend the natural and probable consequences of one's actions. *Furr* v. *State*, 308 Ark. 41, 822 S.W.2d 380 (1991).

■ Appellant's second challenge to the sufficiency of the evidence is that her statements were not corroborated as required by law. Contained within this point is a sub-argument that was not raised at trial. Appellant contends that the State "improperly charged her, which perhaps resulted in the jury being unable to render a verdict on both offenses charged due to the confusion created by the same." As this argument was not raised at trial, and it is well settled that this court does not address arguments raised for the first time on appeal and an appellant may not change the basis of his argument, we do not address this issue. *Stewart* v. *State*, 320 Ark. 75, 894 S.W.2d 930 (1995). Even in cases where life without parole is imposed, this court's duty is only to examine the record for error on objections decided adversely to an appellant. Ark. Sup. Ct. R. 4-3(h).

■ Appellant's argument that her statements were not corroborated as required by law is without merit. Section 16-89-111 of the Arkansas Code Annotated provides, "A confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that the offense was committed." *Id.* § 16-89-111(d) (1987). This statute only requires proof that the crime was committed by someone. *Leshe* v. *State*, 304 Ark. 442, 803 S.W.2d 522 (1991). Here, there was proof that: (1) Vernon Gray was killed outside Bernita Webb's apartment at the Chickasaw Courts; (2) his death was the result of a homicide; (3) appellant attempted to hire Richard Razor to kill Gray; (4) a man named Jackie Jones was at his girlfriend's apartment in the Chickasaw Courts shortly after the murder; and (5) Jackie Jones was a disc jockey at the Top Spot nightclub, which corroborated appellant's statement that Gray had said he knew the man from the Top Spot. Thus, the trial court correctly found that there was corroborating evidence that the crime was committed by someone in the manner described by appellant in her confession. *Trotter* v. *State*, 290 Ark. 269, 719 S.W.2d 268 (1986); *Smith* v. *State*, 286 Ark. 247, 691 S.W.2d 154 (1985); *see also McQueen* v. *State*, 283 Ark. 232, 675 S.W.2d 358 (1984).

Appellant's next assignment is that the trial court erred in admitting appellant's two taped confessions because they contain hearsay statements made by Jackie Jones and Bernita Webb. The trial court ruled that the statements that appellant said were made by Jones and Webb were those of co-conspirators and admissible under A.R.E. Rule 801(d)(2)(v).

■■ Even if the statements of Jones and Webb were offered for the truth of the matter asserted, an issue we do not decide, a statement made by a co-conspirator during the course and in furtherance of a conspiracy is an admissible exception to the hearsay rule. A.R.E. Rule 801(d)(2)(v); *see also Pyle* v. *State*, 314 Ark. 165, 862 S.W.2d 823 (1993). Where an actual criminal act is performed by an alleged accomplice, the accomplice's statements made during the transactions are admissible as a statement of a co-conspirator. *Foxworth* v. *State*, 263 Ark. 549, 566 S.W.2d 151 (1978). Admission of the statement of a co-conspirator requires a finding by the trial court that there was an independent *prima facie* showing of a conspiracy. *Dixon* v. *State*, 310 Ark. 460, 839 S.W.2d 173 (1992). The sufficiency of evidence of a conspiracy is decided by the trial court. *Id.* at 465, 839 S.W.2d at 176. Appellant did not argue at trial, nor does she argue on appeal, that there was insufficient evidence of a conspiracy; rather, she argues only that the statements were hearsay. Thus, the trial court ruled correctly.

The sentence in this case is life imprisonment without parole, and in accordance with Ark. Sup. Ct. R. 4-3(h), we are required to examine the entire transcript to determine whether there were other rulings adverse to appellant that constitute reversible error. An examination of the record has been made, and we have determined that there were no rulings adverse to appellant that constituted prejudicial error.

Affirmed.