Denaro Shatour COOK *v.* STATE of Arkansas

CR 02-329 86 S.W.3d 916

Supreme Court of Arkansas
Opinion delivered October 24, 2002

402

*Arkansas Public Defender Commission*, by: *Janice W. Vaughn* and *Llewellyn J. Marczuk*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Kent Holt*, Ass't Att'y Gen., for appellee.

Jim Hannah, Justice. Denaro Shatour Cook appeals his convictions for first-degree murder, aggravated robbery, and theft. Criminal liability in this case is based upon accomplice liability. Appellant asserts four issues on appeal. He alleges that there was insufficient evidence to convict him on first-degree murder, aggravated robbery, and theft of property. He also alleges that the trial court erred in refusing to instruct the jury on the lesser-included offense of robbery on the aggravated robbery charge, and that the trial court erred in refusing to instruct the

jury on the lesser-included offense of felony manslaughter on the capital murder charge. Finally, he argues that the trial court erred in admitting hearsay testimony of Tim Dillard, who testified to what Appellant said to his brother before the robbery and murder. We affirm.

■ This case was appealed to the court of appeals, affirmed, and we granted the petition for review. When we grant a petition for review pursuant to Ark. Sup. Ct. R. 2-4, we treat the appeal as if it were filed in this court originally. *Tucker v. Roberts-McNutt, Inc.*, 342 Ark. 511, 29 S.W.3d 706 (2000); *Fowler v. State*, 339 Ark. 207, 5 S.W.3d 10 (1999). Thus, we review the trial court's judgment, not that of the court of appeals. *Davenport v. Lee*, 348 Ark. 148, 72 S.W.2d 85 (2002).

*Facts*

On April 13, 1999, the Western Sizzlin restaurant on Rodney Parham Road in Little Rock was robbed shortly after closing. While the facts provided by the various witnesses are not entirely consistent on details, it appears that Appellant's brother Keyono, who will be referred to in the opinion by his nickname Buck for purposes of clarity, and others, came to the restaurant in two cars about closing time pursuant to a plan to rob Western Sizzlin. During the course of that robbery, manager David Nichols was murdered. Between $1800 and $2100 was taken.

Kyona Nicole Hyder was working at the Western Sizzlin that night and noticed that the doors were not locked at closing, and that other things that were normally done at closing were not being done. She testified that not only were the front doors left unlocked, but the back door was also unlocked. According to Kyona, the practice was that the back door was to be immediately relocked when it was used. Kyona went on to testify that she saw former employee Frank Barnes running along the outside of the building toward the back of the building as the restaurant was being closed. Kyona testified that she told Appellant she had seen Frank, and Appellant told her Frank had to use the bathroom. Kyona then testified that sometime later she saw Frank and Buck

by the utility closet in the kitchen area of the restaurant. Buck was also a former employee of the restaurant.

According to Kyona, Buck had a ski mask on the top of his head. She spoke to Buck and Frank, but they did not answer. Rather, Buck motioned to her to be quiet. Kyona further testified that Appellant came to her later and said, "I think my brother killed the manager," and that when she questioned him, he said, "I'm for real, you know." According to Kyona, Appellant's demeanor was "weird and joking." She also testified that Appellant told her, "you can't say nothing," which she understood to mean that she should be quiet. Later she testified that it might have been Appellant's brother Torian who told her that. Torian also worked at the restaurant and was present that night. Kyona testified that she looked around for Nichols after she saw Buck and Frank, but did not find him, and that she waited around for Nichols to sign her time card, but he did not come out to sign it. She then testified that she eventually went home. According to Kyona, she later called back to the restaurant to see if they had found Nichols, and Appellant answered the telephone.

Sharronda Arnold also worked at Western Sizzlin and was present the night of the robbery and murder. She testified that the back door was unlocked all night that night, which she said was contrary to policy, and that normally the door was not unlocked. She also testified that she saw Buck and Frank drive up in the lot outside. According to her testimony, Appellant went outside and spoke to Buck and Frank for about ten minutes. Sharronda testified that upon his return, Appellant went to the back but did not take dishes or anything with him. Sharronda further testified that Appellant came back out front, and then went outside again and made hand motions to Buck and Frank to come inside. Sharronda then testified that when Appellant came back inside he said "they were fixing to rob the place." She testified that Appellant was laughing. She also testified that after Appellant told her they were going to rob the place, she saw Buck and Frank go up the side of the building to where the back door was located. She further testified that she heard loud banging and went to the back where she

saw Buck and Frank. Buck was wearing a black ski mask. According to Sharronda, Buck had a green money bag and what appeared to be a gun. Sharronda also testified that Appellant told her "they killed him," and "David is dead." She testified that Appellant's hands were trembling as he told her. According to Sharronda, while they were waiting for police to arrive, Appellant told her "we do not know nothing. Tell the police that we do not know anything." Sharronda further testified that Torian, Appellant's brother, went out to talk to Buck that night before the robbery, and that when Torian returned, he, too, said Buck was "going to rob the place," and that Buck was wondering if anyone would snitch on him.

Tim Dillard testified that he arrived at the restaurant in a car with Frank. He then testified that after they arrived, Appellant came out of the restaurant to talk to Buck on at least two occasions. Tim could not hear their conversation because they were speaking outside and he was inside the car. Tim testified that when Buck got in the car after speaking with Appellant, Buck told him, "it was clear to go through the back door." Tim also testified that Buck told him Appellant was the one who told him it was clear. Tim testified that Buck then went in the back door, followed a couple of minutes later by Frank. Tim further testified that when Frank returned to the car, he was hostile and said that "Buck shot that man." Tim testified that they were about to leave when Buck came out with the bank bag and got in the car. Tim also testified that he was with Buck and Frank later when they divided the money between them.

Dillard further testified that Appellant threatened him at school, "Saying he was going to handle me because I snitched along with some other couple of people that we snitched, and we told on his brother."

Rodney Barnes, Frank's brother, testified that he was at the Western Sizzlin when it was robbed. According to his testimony, he arrived with Buck, Nakia, and Tim in Appellant's car. Rodney testified that after they arrived, Torian came out first and spoke with Buck and that Appellant came out soon thereafter.

Rodney further testified that Torian tried to convince Buck not to rob the restaurant and that Buck calmed down, but after Appellant came out and spoke to Buck, Buck was "all hyped then." According to Rodney, Appellant talked to Buck about a back door. Rodney also testified that Buck said that he was going to rob this Western Sizzlin because he knew the manager was not armed. Again, according to Rodney's testimony, Appellant was saying to Buck, "He was like, the manager in the office counting the money. . .And all the door was open. . .And after [Denaro] told him to go in and do it, I mean. . .he didn't hesitate, he just got out of the car and did what he had to do, I guess." Rodney also testified that Appellant told him after the robbery, "Don't say nothing." Rodney further testified that Appellant got money from Buck that came from Western Sizzlin.

Nakia testified that she was Frank's girlfriend. She further testified that she was present in Frank's car on the night of the robbery. At one point she testified that she was in the car with Tim Dillard, too. Nakia testified that she saw Appellant come out of the restaurant on two occasions that night to speak with Buck and Frank. She also testified that she never saw Appellant motioning to Buck.

Appellant also testified. He denied any involvement in the robbery and murder. Rather, he testified that he saw his brother Buck drive up, and that he went out to tell him he would be finished soon, assuming his brother Buck had come to pick him up. He further testified that his brother Torian went out to speak with Buck, and that when Torian returned, it was apparent he was upset. Appellant then testified that Torian told him Buck was thinking about robbing the restaurant. According to Appellant, he then went back out to Buck and tried to talk him out of robbing the restaurant, telling him to go home. Appellant testified he told Sharronda that Buck had threatened to rob the place.

Appellant denied seeing Buck or Frank inside the restaurant. He testified that he was cleaning up when he heard two loud noises. Appellant then testified that he helped look for the victim and was there when the victim's body was discovered and the

police were called. Appellant further testified that after they were all released by the police that night, he saw his brother who asked if the victim were dead. Appellant admitted lying to the police but attributed it to protecting his brother.

Dr. Stephen Erickson, an associate medical examiner at the Arkansas State Crime Lab, testified that he performed an autopsy on Nichols's body and expressed an opinion that Nichols died of multiple gunshot wounds.

## Sufficiency of the Evidence

■ Preservation of Appellant's right against double jeopardy requires that we consider the challenge to the sufficiency of the evidence before we consider alleged trial error even though the issue was not presented as the first issue on appeal. *Price v. State*, 347 Ark. 708, 66 S.W.3d 653 (2002); *King v. State*, 323 Ark. 671, 916 S.W.2d 732 (1996).

■ It is well settled that a motion for a directed verdict is a challenge to the sufficiency of the evidence. *Atkinson v. State*, 347 Ark. 336, 64 S.W.3d 259 (2002). *See also Smith v. State*, 346 Ark. 48, 55 S.W.3d 251 (2001). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Smith, supra*. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Atkinson, supra*. When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the State. *Atkinson, supra*. Only evidence supporting the verdict will be considered. *Atkinson, supra*.

■ ■ Appellant's criminal liability is based upon his status as an accomplice. In cases such as the instant one, where the theory of accomplice liability is implicated, we affirm a sufficiency of the evidence challenge if substantial evidence exists that the defendant acted as an accomplice in the commission of the alleged offense. *Purifoy v. State*, 307 Ark. 482, 822 S.W.2d 374 (1991); Ark. Code Ann. § 5-2-402(2) (Repl. 1997). A person is crimi-

nally liable for the conduct of another person when he is the accomplice of another person in the commission of an offense. Ark. Code Ann. § 5-2-402 (Repl. 1997). Under Ark. Code Ann. § 5-2-403 (Repl. 1997), an accomplice is defined as follows:

(a) A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he:

(1) Solicits, advises, encourages, or coerces the other person to commit it; or

(2) Aids, agrees to aid, or attempts to aid the other person in planning or committing it; or

(3) having a legal duty to prevent the commission of the offense, fails to make proper effort to do so.

(b) When causing a particular result is an element of an offense, a person is an accomplice in the commission of that offense if, acting with respect to that result with the kind of culpability sufficient for the commission of the offense he:

(1) Solicits, advises, encourages, or coerces the other person to engage in the conduct causing the result; or

(2) Aids, agrees to aid, or attempts to aid the other person in planning or engaging in the conduct causing the result; or

(3) Having a legal duty to prevent the conduct causing the result, fails to make proper effort to do so.

Ark. Code Ann. § 5-2-403 (Repl. 1997).

■ ■ The determination of the status as an accomplice is ordinarily a mixed question of law and fact. *Atkinson, supra.* In this case, the issue was submitted to the jury. The facts do not place Appellant at the murder scene. However, that is not necessary. A criminal defendant is an accomplice where the defendant renders the requisite aid or encouragement to the principal with regard to the offense at issue, irrespective of the fact that the defendant was not present at the murder scene and did not directly commit the murder. *Atkinson, supra. See also Sumlin v. State,* 273 Ark. 185, 617 S.W.2d 372 (1981). Although Appellant was not

present at the murder, he may be liable as an accomplice if he assisted and actively participated in the crime. *Crutchfield v. State*, 306 Ark. 97, 812 S.W.2d 459 (1991). When two persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. A participant cannot disclaim responsibility because he did not personally take part in every act that went to make up the crime as a whole. *Crutchfield, supra; Parker v. State*, 265 Ark. 315, 325, 578 S.W.2d 206 (1979).

As to the sufficiency of the evidence, Buck admitted shooting the victim. The victim died. Dr. Erickson testified that the victim died of multiple gunshot wounds. The testimony of Nakia, Tim, and Appellant showed that Buck came to the restaurant to commit a robbery. Sharronda testified that she saw Buck with a ski mask, a money bag, and a gun. Tim testified about the plans to rob the restaurant. He also testified that he saw the money bag and watched the money being divided. Rodney testified that Appellant received a cut of the money from Buck. There is substantial evidence of the commission of the crimes by Buck and Frank.

There is also evidence that Appellant facilitated, encouraged, and participated in the above noted crimes. Rodney testified that Appellant told Buck the back door was unlocked and to go ahead and do it. Kyona and Sharronda testified about Appellant's behavior, going outside to speak with Buck, making gestures, appearing to go to the back of the restaurant to open the back door, telling them what was happening, and telling them to be quiet about what happened. Witnesses testified that Appellant was still telling witnesses to be quiet several days after the crimes. Dillard and Rodney also gave testimony about Appellant's actions that incriminated him and inferred he was an active participant in the crimes. Viewing the evidence in a light most favorable to the State, and giving deference to the jury's findings on credibility, there was overwhelming evidence that Appellant was an accomplice.

Appellant, however, argues that the trial court erred in refusing to declare Dillard and Rodney accomplices as a

matter of law. For an individual to be an accomplice, he must engage in one of the activities articulated in Ark. Code Ann. § 5-2-403 (Repl. 1997). The appellant bears the burden of proving that a witness is an accomplice whose testimony must be corroborated. *McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999). Mere presence at the crime scene or failure to inform law enforcement officers of a crime does not make one an accomplice as a matter of law. *Britt v. State*, 334 Ark. 142, 974 S.W.2d 436 (1998). The trial court determined that the question of accomplice liability presented a question of fact which was appropriate for determination by the jury. *Raynor v. State*, 343 Ark. 575, 36 S.W.3d 315 (2001). Our review supports this finding. There is no merit to the claim of insufficient evidence.

## Jury Instructions

 Appellant alleges the trial court erred when it refused to instruct the jury on robbery and felony manslaughter. In essence, Appellant argues that although his brother Buck shot and killed Mr. Nichols, he should have gotten an instruction on robbery because there was evidence from which the jury could find he was unaware Buck had and used a gun in the robbery. Likewise, Appellant argues that there was evidence from which the jury could have found he acted only negligently with respect to the death of Mr. Nichols, and on that basis, a felony manslaughter instruction should have been given. Appellant misperceives the nature of accomplice liability. Appellant was not convicted of any robbery or homicide which he committed. Rather he was convicted as an accomplice in the robbery and murder committed by Buck. Accomplice liability makes Appellant liable for the criminal conduct of Buck. Ark. Code Ann. § 5-2-402 (Repl. 1997). It is settled law that a person is criminally responsible for the conduct of another person when he is an accomplice in the commission of an offense. *State v. Babbs*, 334 Ark. 105, 971 S.W.2d 774 (1998); *Smith v. State*, 271 Ark. 671, 609 S.W.2d 922 (1981); *See also* AMCI2d 401. There is no distinction between the criminal liability of an accomplice and the criminal liability of the person who actually commits the offense. *Riggins v. State*, 317 Ark. 636, 882

S.W.2d 664 (1994). In *Riggins*, the appellant argued that the trial court erred in instructing on first-degree murder where he was not the principal perpetrator of the crime. *Riggins, supra.* This court held there was no error where the charge was premised on accomplice liability. Under accomplice liability, a criminal defendant may be found guilty of the conduct of his accomplice. *Purifoy, supra.*

 The State did not argue that Appellant robbed or killed Nichols. The State did accuse the Appellant of theft and of being an accomplice to capital murder and aggravated robbery. Whether Appellant saw the gun or whether he knew that Buck was going to use a gun is not relevant to this case. Whether Appellant might have been charged as negligently causing Nichols's death is not at issue. At trial, the State argued that Appellant promoted, facilitated, encouraged, aided, and otherwise assisted in the robbery at Western Sizzlin. There was no error in refusing to give the jury instructions on lesser-included offenses.

*Hearsay*

Appellant alleges that the trial court erred in admitting testimony of Tim Dillard. At trial, Tim testified not to what he had heard Appellant say, but rather to what Buck told Tim Appellant had said. This testimony recounted a statement by Appellant and was offered to show Appellant's involvement in the robbery. It was offered for the truth of the matter asserted.

The pertinent testimony was as follows:

A Denaro told Buck it was clear.

Q And so Denaro told Buck it was clear, go through the back door?

A Yes.

The trial court found the above testimony was a statement of Buck that came in under Ark. R. Evid. 801(d)(2)(v), which permits introduction into evidence of admissions, and in particular, a

statement by a coconspirator of a party made during the course and in furtherance of the conspiracy.

The trial court erred. What was at issue was a *statement of a party*. Ark. R. Evid. 801(d)(2)(v) admits statements of coconspirators of a party. Appellant is the party. Buck is the coconspirator of the party. The statement of Appellant is not excepted from hearsay by Rule 801(d)(2)(v), but by Rule 801(d)(2)(i) as a party's own statement.[1] Had Buck testified, the statement would have been excepted from hearsay by Rule 801(d)(2)(i). He did not testify. Appellant's statement was not excepted from hearsay by Rule 801(d)(2)(v) as discussed hereafter.

 We must first note that the testimony constitutes hearsay within hearsay, or double hearsay. First, we have a statement of Appellant that was made to Buck. Second, we have that statement related to Tim who then testified to it at trial. Double hearsay is not admissible under Ark. R. Evid. 805. *Morrow v. State*, 264 Ark. 227, 570 S.W.2d 607 (1978). To be admissible, each level of hearsay must conform to an exception of the hearsay rule. *Morrow, supra*. See also, *United States v. Ortiz*, 125 F.3d 630 (8th Cir. 1997), wherein the Eighth Circuit Court of Appeals held that Fed. R. Evid. 805 requires that each level of hearsay fall within a hearsay exception.

 It is argued, however, that as a statement of a coconspirator, Ark. R. Evid. 801(d)(2)(v) excludes the statement from hearsay entirely. This argument ignores the fact that we have double or two levels of hearsay. Both levels of hearsay must be analyzed. If the first level when Appellant told Buck, is determined to not be hearsay, that still leaves an analysis of whether it

---

[1] The concurrence misperceives the statement being offered. What is at issue is Appellant's statement, or in other words an oral assertion of the Appellant. See Ark. R. Evid. 801(a)(1). A party's statement is admitted under Rule 801(d)(2)(i). Contrary to the assertion in the concurrence, the court does not hold that the testimony is not hearsay under Rule 801(d)(i), but that under Rule 801(d)(2)(i) it would have been exempted from hearsay under the rule had Buck testified to it. Buck was the person who heard the statement. He did not testify, and the statement was thus not admissible under Rule 801(d)(2)(i).

was hearsay when it was passed from Buck to Tim. Rule 801(d)(2)(v) does not provide a blanket exclusion from hearsay to simply admit anything a coconspirator said. Nor does Rule 801(d)(2)(v) provide a blanket exclusion from hearsay to admit a statement by a coconspirator, regardless of the number of persons it may have passed through before it reaches testimony at trial.

Arkansas Rule of Evidence 801(d)(2)(v) provides a showing of trustworthiness for statements of coconspirators as those statements are defined under the rule and under case law.[2] In *Idaho v. Wright*, 497 U.S. 805, 815 (1990), the United States Supreme Court stated, "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized trustworthiness." Arkansas Rule of Evidence 801 deals with such other case and provides the particularized reliability and trustworthiness for admissions.

Tim's testimony of what Buck told him Appellant said fails to meet the requirements of Rule 801. Tim's testimony of what Buck told him Appellant said is not a statement under Rule 801(d)(2)(v). Rule 801(a) defines a statement under the rule as an oral or written assertion. It may also be nonverbal conduct if the conduct was intended as an assertion.

Rule 801(d)(2)(v) is intended to permit introduction of admissions of coconspirators. In other words, it is intended to admit assertions of coconspirators of their own involvement in the conspiracy. Even in this regard, it is limited to properly admissible

---

[2] A party's statement is not admissible under Rule 801(d)(2)(v). Only statements of a coconspirator of a party are admissible under Rule 801(d)(2)(v). What Buck communicated to Dillard was not his own statement, but Appellant's statement. Ark. R. Evid. 801 (a)(1). Thus, Appellant's statement to Buck cannot be analyzed as the concurrence attempts. Rule 801(d) does not provide a blanket exclusion of a statement from hearsay simply because it is a statement amounting to an admission. Rather, as the cases make clear, Rule 801(d) is a codification of longstanding evidentiary and substantive law whereby the certain specified statements amounting to admissions are admitted because the necessary indicia of reliability for admission under long established common law and constitutional requirements are met. The concurrence's analysis ignores constitutional requirements such as the right to confront witnesses.

statements made during the course and in furtherance of the conspiracy.

 Statements of coconspirators regarding their own conduct are admissible for sound and long-standing reasons. In discussing why unavailability need not be shown to introduce statements of coconspirators regarding their own involvement, the United States Supreme Court explained that because the statements are made in the course and in furtherance of the conspiracy:

> such statements provide evidence of the conspiracy's context that cannot be replicated, even if the declarant testifies to the same matters in court. When the Government — as here — offers the statement of one drug dealer to another in the furtherance of an illegal conspiracy, the statement often will derive its significance from the circumstances in which it was made. Conspirators are likely to speak differently when talking to each other in furtherance of their illegal aims than when testifying on the stand.

*United States v. Inadi*, 475 U.S. 387, 395 (1986). The United States Supreme Court went on to note that there is, in this regard, a lack of strong similarity between coconspirator statements and live testimony at trial. The court stated, "To the contrary, coconspirator statements derive much of their value from the fact that they are made in a context very different from trial, and therefore are usually irreplaceable as substantive evidence." *Id.*

 Evidence, which was admitted properly through Tim, that Buck made statements about his own conduct to Tim shortly before the robbery indicating that the robbery was moving forward, is strong evidence of the conspiracy between Appellant, Frank and Buck, because these statements of Buck's own involvement were made at the time of the conspiracy. Tim testified that after making several statements to him, Buck went inside. Further evidence was offered to show that very soon after Buck made these statements to Tim, both he and Frank were seen running down the side of the building and were then seen in the building.

 The same indicia of reliability simply cannot be found for Buck's statement to Tim that Appellant told him something that amounted to an admission of Appellant's involvement. There

is nothing about the moment Buck told Tim what Appellant said, which is an element required under 801(d)(2)(v), that made it more reliable because it was stated in that moment. Had Buck testified at trial to Appellant's statement, it would have had just as much of an indicia of reliability. Rule 801(d)(2)(v) is inapplicable to the report by Buck to Tim that Appellant made an admission.

The aims of Rule 801(d)(2)(v) would be frustrated by admission of what Buck said Appellant said because it would result in less reliable evidence being admitted rather than in more reliable and trustworthy evidence being admitted.

■ Twice this court has stated that testimony regarding what a coconspirator said, in other words, testimony regarding an assertion by a coconspirator, must be a vicarious admission to be admissible. *Pyle v. State*, 314 Ark. 165, 862 S.W.2d 823 (1993); *Patterson v. State*, 267 Ark. 436, 591 S.W.2d 356 (1979). The evidence of a coconspirator's admission or assertion of his involvement has greater value because it is his own conduct that he is implicating. The exclusion of such evidence from the law on hearsay long predates the present federal rules, as well as our own rules. Judge Learned Hand stated on this issue:

> Such declarations are admitted upon no doctrine of the law of evidence, but of the substantive law of crime. When men enter into an agreement for an unlawful end, they become *ad hoc* agents one for another, and have made "a partnership in crime." What one does pursuant to their common purpose, all do, and, as declarations may be such acts, they are competent against all.

*Van Riper v. United States*, 13 F.2d 961 (2nd Cir. 1926).

■ In *Dean v. State*, 293 Ark. 75, 732 S.W.2d 855 (1987), this court held that a statement by a coconspirator that the appellant was in the car, thereby implicating the appellant in the drug transaction, "was not her (the coconspirator's) own admission of involvement, but rather was a statement implicating Dean in the delivery." *Dean*, 293 Ark. at 81. This court held that the above statement did not fit within the definition of statements which are not hearsay. *Dean, supra.* It was offered to prove the truth of the

matter asserted and was held inadmissible. *Id.* The same situation exists in this case where an alleged statement of Buck implicating Appellant, and not Buck, is inadmissible under Ark. R. Evid. 801(d)(2)(v) because it is not an admission by Buck of his involvement. What Buck said Appellant admitted to him is not a statement under Rule 801(d)(2)(v) and is therefore not admissible under (d)(2)(v).

■ Finally, we must consider the fact that Tim testified that Buck told him of the admission. That is the second leg of the double hearsay. In *Jones v. Abraham*, 341 Ark. 66, 15 S.W.3d 310 (2000), this court stated:

> Hearsay is inadmissible except as provided by law or by the rules of evidence. Ark. R. Evid. 802. Statements by an out-of-court declarant, both of which are repeated in court by a witness, are inadmissible unless each part of the combined out-of-court statements conforms with an exception to the rule excluding testimony in the form of hearsay. Ark. R. Evid. 805.

Rule 801 is not applicable, and the exceptions of Rule 803 do not appear to apply. There was no argument that Buck could not be produced at trial, or that he refused to testify. It appears the testimony on the second level was inadmissible hearsay.

■ ■ However, Appellant fails to show how he was prejudiced by this inadmissible testimony. In fact, when Tim's testimony is considered in the absence of the inadmissible hearsay, the inescapable conclusion is that Appellant was doing precisely what the hearsay evidence was offered to prove. We also note that there is abundant evidence of Appellant's involvement in making sure the coast was clear, motioning the robber in, setting up the plan, and using the back door. Where evidence of guilt is overwhelming and the error slight, we can declare the error harmless and affirm. *Bledsoe v. State*, 344 Ark. 86, 39 S.W.3d 760 (2001) See also, *Kidd v. State*, 330 Ark. 479, 955 S.W.2d 505 (1997); *Abernathy v. State*, 325 Ark. 61, 925 S.W.2d 380 (1996).

Affirmed.

BROWN and IMBER, JJ., concur.

ANNABELLE CLINTON IMBER, Justice, concurring. I agree that the trial court should be affirmed in all respects. However, I write in order to address the majority opinion's analysis of the admissibility of Tim Dillard's testimony about a co-conspirator's (Buck) statement to him in which the co-conspirator related what he had been told by another co-conspirator (Denaro). The testimony at issue includes two out-of-court statements. Thus, each statement must be analyzed under Rule 801 of the Arkansas Rules of Evidence that sets forth the applicable definitions for hearsay. While it is true that the statements at issue are out-of-court-statements under Ark. R. Evid. 801(c), those statements are specifically excluded from the definition of hearsay under Ark. R. Evid. 801(d). As such, they are not hearsay and, thus, are admissible under the Arkansas Rules of Evidence.

Specifically, an analysis of each statement reveals that neither statement was hearsay. At trial Dillard was allowed to testify to Buck telling him "Denaro said it's clear to come in through the back." The court initially overruled defense counsel's objection under Ark. R. Evid. 801(d)(2)(v) (not hearsay) and Ark. R. Evid. 804(b)(3) (hearsay exceptions). Subsequently, following a hearing outside the jury's presence, the trial court granted the State's motion to allow Dillard to testify about the conversation he had with Denaro's co-conspirator under Rule 801(d)(2)(v).

Statements offered against a party and made by a co-conspirator of a party during the course and in furtherance of a conspiracy are not hearsay. Ark. R. Evid. 801(d)(2)(v) (2002); *Henderson v. State*, 329 Ark. 526, 953 S.W.2d 26 (1997); *Spears v. State*, 321 Ark. 504, 905 S.W.2d 828 (1995). Furthermore, this court has held that where an actual criminal act is performed by an alleged accomplice, the accomplice's statements made during the transaction are admissible as statements of a co-conspirator. *Pyle v. State*, 314 Ark. 165, 862 S.W.2d 823 (1993).

As previously indicated, there are two out-of-court-statements at issue. First, we look to the out-of-court statement made by Denaro to Buck. The majority correctly holds that this state-

ment is not hearsay under Ark. Rule Evid. 801(d)(2)(i). It was offered against Denaro and was his own statement.

Having concluded that Denaro's out-of-court-statement is not hearsay, we must determine whether Buck's statement to Dillard is admissible under Ark. R. Evid. 801(d)(2)(v). First, Buck's statement was being offered against a party, Denaro, thereby satisfying the first prong of Rule 801(d)(2). The second prong requires that the statement be made by a co-conspirator of a party during the course and in furtherance of the conspiracy. Buck and Denaro were co-conspirators, thereby qualifying Buck's statement under the first part of the Rule's second prong. The remaining issue then becomes whether Buck's statement was made during the course and in furtherance of the conspiracy.

This court has held that statements by an alleged co-conspirator during the course and in furtherance of the conspiracy are admissible if the State makes a prima facie showing that a conspiracy existed between the declarant, in this case Buck, and the defendant, in this case Denaro. *Dyer v. State*, 343 Ark. 422, 36 S.W.3d 724 (2001). In *Dyer*, we stated:

> Although this court has had few opportunities to discuss the 'in furtherance of' element of Rule 801(d)(2)(v), it has held that statements designed to further the specific objective of the conspiracy are made in furtherance of the conspiracy. *Dixon*, 310 Ark. 460, 839 S.W.2d 173. Federal cases interpreting the corresponding federal rule of evidence hold that this requirement should be interpreted broadly. *See Cordova*, 157 F.3d 587; *United States v. Edwards*, 994 F.2d 417 (8th Cir.1993). Thus, statements that have an overall effect of facilitating the conspiracy or that somehow advance the objectives of the conspiracy are said to be in furtherance of the conspiracy. *Id.*; *United States v. Garcia*, 893 F.2d 188 (8th Cir.1990). Statements that identify a fellow conspirator are also considered to be in furtherance of the conspiracy. Id. (citing United States v. Handy, 668 F.2d 407 (8th Cir.1982)).

*Id.* at 429, 33 S.W.3d at 728. We further concluded that statements that may be viewed as being designed to enlist one's assistance or to induce one's aid in achieving one of the objectives of

the conspiracy are admissible under Rule 801(d)(2)(v). *Dyer v. State, supra.* Like the statements in *Dyer*, Buck's statement to Dillard as to what Denaro said may be viewed as an attempt to enlist the assistance of Dillard and, thus, is not hearsay under Rule 801(d)(2)(v).

The majority overlooks the "during the course and in furtherance of the conspiracy" language in essentially holding that Rule 801(d)(2)(v) is never applicable when a co-conspirator's statement contains an out-of-court statement made by a party. I disagree. The majority appropriately holds that each out-of-court statement must be independently analyzed. Moreover, it is undisputed that a statement made by a defendant co-conspirator (Buck) is admissible under Rule 801(d)(2)(i). Yet, the majority goes on to conclude that Rule 801(d)(2)(v) does not apply when the co-conspirator's statement contains an admission by the defendant. The plain language of the rule makes no such exception.

The majority's reliance on *Dean v. State*, 293 Ark. 75, 732 S.W.2d 855 (1987), is misplaced. In that case, the statement at issue was not the declarant's own admission of involvement, but rather a statement implicating only the defendant. Here, the statement is an admission that Buck had received the information necessary to commit the aggravated robbery. By telling Dillard the information he was told by Denaro, that is, that it was clear to go in the back door, Buck implicated both himself and Denaro in the commission of the aggravated robbery.

Rule 801(d)(2)(v) of the Arkansas Rules of Evidence declares that any statement made by a co-conspirator during the course and in furtherance of the conspiracy is simply not hearsay. While the majority opinion expresses concern about a co-conspirator's statement being admissible "regardless of the number of persons it may have passed through before it reaches testimony at trial," such a conclusion ignores the "during the course and in furtherance of the conspiracy" language in the Rule. Rule 801(d)(2)(v) does not apply to: (a) statements made by someone other than a co-conspirator; or (b) statements not made during the course and in furtherance of the conspiracy.

For the above mentioned reasons, I conclude that the trial court did not abuse its discretion in admitting the challenged testimony. Accordingly, I concur with result reached by the majority.

BROWN, J., joins this opinion.