Charnaley MARSHALL *v.* STATE of Arkansas

CA CR 04-1146                                      223 S.W.3d 74

Court of Appeals of Arkansas

Opinion delivered January 18, 2006

[Rehearing denied February 22, 2006.]

*The Rogers Law Firm, P.A.*, by: *Edmundo G. Rogers*, for appellant.

*Mike Beebe*, Ark. Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.

A NDREE LAYTON ROAF, Judge. A Clark County jury convicted appellant Charnaley Marshall of rape. He was sentenced to ten years in prison. On appeal, Marshall argues that the trial court erred when it denied his directed-verdict motion, because the evidence was insufficient to prove the occurrence of sexual intercourse involving penetration and insufficient to prove that the sixteen-year-old victim, S.B., was mentally incapacitated or physically helpless. We affirm.

Taiwan Dickerson testified that on January 31, 2004, he was at Marshall's mother's apartment drinking with Marshall and other friends. Around midnight, Dickerson drove Marshall to pick up S.B. and another girl, Victoria, and they all returned to the apartment. S.B. and Victoria were drinking shots of alcohol. Victoria left the party with a girl named Carreshia at approximately 2:00 a.m., leaving S.B. alone and intoxicated with Marshall, his brother Chris Marshall, and several other men. Dickerson saw Marshall trying to put S.B. on his lap, and he witnessed Marshall and Moody take off S.B.'s clothes and panties. Marshall then took S.B. into his room and shut the door. According to Dickerson, S.B. "was out of it, she didn't know what was going on." When Blake opened Marshall's door, Dickerson saw Marshall pulling his pants up and saw S.B. on the floor "with her legs up a little and spread. . . ." Marshall then took S.B. to his bed and began fondling her in her vaginal area. S.B. began vomiting, and Dickerson decided to leave, but he remembered helping to take S.B. to the bathroom before he left.

Blake Moody testified that he first saw S.B. at the apartment around midnight. According to Moody, Marshall made S.B. a drink, and then S.B. and Victoria began to have a drinking contest. Moody estimated that each girl had about twelve shots over a twenty-minute time period. Moody opined that S.B. was drunk and passed out after Victoria left the party. According to Moody, he and Dickerson helped take off S.B.'s clothes in Marshall's bedroom. Moody at one point witnessed Marshall rubbing S.B. in her vaginal area. Moody testified that Marshall laid her on his bed, reached into a drawer and pulled out a condom, and told Dicker-

son and Moody to leave. When Moody went back to the bedroom a few minutes later, Marshall "jumped off of [S.B.]." Marshall was "on top of [S.B.] between her legs" when Moody walked in, and Moody observed that Marshall's pants were around his knees. S.B. then began to vomit, Moody helped take her to the bathroom, and Marshall entered the bathroom and shut the door. According to Moody, S.B. was passed out and naked at the time. After about five minutes, Chris opened the bathroom door with a knife and told Marshall to get off of S.B. Moody saw Marshall on top of S.B., and he testified that both Marshall and S.B. were naked and that Marshall had an erection.

According to Moody, at this point, Dickerson, James Giles, and Carreshia, who had just returned to the apartment, put S.B.'s clothes back on, and Marshall carried her to the car. Moody testified that S.B. was passed out at this time. Carreshia, Marshall, and Moody took S.B. to a friend's house and put her on the couch. S.B. was passed out the whole time that she was being transported to her friend's house.

James Giles testified that he was at Marshall's mother's apartment on January 31, 2004, and that he saw S.B. "with her pants halfway down and she was propped up on her knees on the floor." According to Giles, she was naked and not in a condition to stand. Giles saw Marshall take S.B. to his room and close the door when he got S.B. into his bedroom. When Chris got the bedroom door unlocked, Giles noticed that Marshall was on top of S.B. between her legs and that his pants were around his knees. He could see Marshall's pelvis but not his penis. S.B. began to vomit. Giles saw Marshall take S.B. to the bathroom, and then he and Dickerson left the apartment.

S.B. testified that she was staying at a friend's house when Marshall and Dickerson came to pick her up around midnight. After she arrived at the apartment, Chris and Marshall made her a drink. S.B. testified that she remembered asking Carreshia to take her home when she took Victoria home. The next thing S.B. remembered was waking up at her friend's house the next day. S.B. testified that, after she woke up, she went to the bathroom and noticed that her vaginal area and abdomen was hurting and that she had a scratch on her head. She tried to take a bath, but it was too painful. Her "private parts, legs and thighs were hurting," so she went to the hospital.

The State rested its case, and Marshall moved for a directed verdict, arguing that there was insufficient evidence of penetration

and insufficient evidence to show that S.B. was physically helpless or mentally incapacitated. The trial court denied the motion.

Chris Marshall, Marshall's brother, testified in Marshall's defense. He stated that Marshall and Dickerson picked up S.B. and brought her to the apartment and that she and Victoria had a drinking contest. Carreshia took Victoria home, and S.B. was left sitting on the couch. According to Chris, S.B. asked if she could lie down, and Chris showed her the bedroom. Marshall then went back to check on her. Chris testified that she had her clothes on when she went to the bedroom and that Marshall was alone with her in the bedroom with the door closed. Chris went to the bedroom and noticed that S.B. was vomiting and that she was naked. He saw S.B. leaning against the door in the bathroom. He testified that someone put her clothes back on, and Marshall took her to the car.

Marshall testified in his own defense. According to Marshall, Chris took S.B. into the bedroom. Marshall went to check on S.B., and when he came out of the bedroom, Moody and Chris went into the bedroom. S.B. then starting vomiting and taking off her clothes. Marshall just "sat and watched her." S.B. rolled off the bed, and Marshall took her to the bathroom. He shut the bathroom door so that he could put her clothes back on her and then took her to the car. He testified that he did not have sexual intercourse with S.B. and that he was never alone with her in the bedroom. Marshall's parents, his former basketball coach, and a pastor also testified as character witnesses. After he rested his case, Marshall renewed his motion for directed verdict, and the trial court denied the motion. Marshall was convicted of rape.

For his first point on appeal, Marshall argues that the evidence against him was insufficient to prove that sexual intercourse took place. Specifically, he argues there was insufficient evidence of penetration. A motion for directed verdict is a challenge to the sufficiency of the evidence. *Cook v. State*, 350 Ark. 398, 86 S.W.3d 916 (2002). Evidence, direct or circumstantial, is sufficient if it is substantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the State. *Id.* This court will only consider evidence that supports the verdict. *Id.*

Circumstantial evidence can support a finding of guilt in a criminal case if it excludes every other reasonable hypothesis

consistent with innocence. *Ross v. State*, 346 Ark. 225, 57 S.W.3d 152 (2001). In a rape case, "penetration can be shown by circumstantial evidence, and if that evidence gives rise to more than a mere suspicion, and the inference that might reasonably have been deduced for it would leave little room for doubt, that is sufficient." *Clem v. State*, 351 Ark. 112, 117-18, 90 S.W.3d 428, 430 (2002) (citing *Tinsley v. State*, 338 Ark. 342, 993 S.W.2d 898 (1999)). The question of whether the evidence excludes every other reasonable hypothesis consistent with innocence is for the jury to determine. *Ross, supra*. The uncorroborated testimony of a rape victim alone is sufficient to sustain a conviction, *Standridge v. State*, 357 Ark. 105, 161 S.W.3d 815 (2004), and one eyewitness's testimony is sufficient to sustain a conviction. *Garner v. State*, 355 Ark. 82, 131 S.W.3d 734 (2003).

A person commits the offense of rape if he or she engages in sexual intercourse or deviate sexual activity with a person "who is incapable of consent because he or she is physically helpless, mentally defective, or mentally incapacitated." Ark. Code Ann. § 5-14-103(a)(1)(B) (Supp. 2003). Sexual intercourse is the "penetration, however slight, of the labia majora by a penis." Ark. Code Ann. § 5-14-101(10) (Supp. 2003). Deviate sexual activity is "any act of sexual gratification involving . . . the penetration, however slight, of the labia majora . . . of one person by any body member or foreign instrument manipulated by another person." Ark. Code Ann. § 5-14-101(1)(B). A person is "physically helpless" when he or she is either unconscious, physically unable to communicate lack of consent, or rendered unaware that the sexual act is occurring." *Id.* § 5-14-101(6).

The State contends that Marshall does not argue on appeal that the evidence was insufficient to prove that he engaged in deviate sexual activity with S.B., and also argues that he has abandoned this argument on appeal. Marshall argues on appeal that the evidence is insufficient to prove that sexual intercourse occurred. However, the jury was instructed that either sexual intercourse or deviate sexual activity would support the rape conviction. The general verdict form did not specify upon which ground the jury found Marshall guilty of rape. Nevertheless, the substance of Marshall's argument is that there was a lack of evidence of penetration, which is an element of both grounds of the rape offense. Indeed, he argues on appeal that "the alleged victim did not testify as to any penetration," and "no one saw any penetration or sexual intercourse" and that the State's witnesses "did not see

[Marshall] penetrate the alleged victim or rub between her vaginal lips." These arguments encompass both bases for the rape conviction. Accordingly, we address the merits of Marshall's argument.

■ Here, the evidence is sufficient to prove that Marshall had sexual intercourse with or engaged in deviate sexual activity with S.B. Dickerson testified that he saw Marshall pulling up his pants and getting up from between the legs of S.B., who was naked lying on her back with her legs bent and spread. Dickerson and Moody also testified that they saw Marshall fondling S.B in her vaginal area. According to Moody, Marshall undressed S.B., took her to a bedroom, pulled a condom out of a drawer, and told the others to leave the room. Moody saw Marshall jump off of S.B. when the bedroom door was opened, saw that his pants were around his knees, and saw that he was on top of S.B. with his mid-section over her vagina. Moody testified that Marshall stayed in the bathroom alone with S.B. for about five minutes and that, when the bathroom door was opened, he saw that Marshall had an erect penis and was getting off of a naked S.B. Giles testified that he saw Marshall carrying S.B. to a bedroom and confirmed that, when the bedroom door was opened a few minutes later, Marshall had his pants down and Giles could see Marshall's pelvis but not his penis.

S.B. testified that she remembered having a drink at the apartment and asking another girl to take her home. She had no memory of anything after that until she woke up the next day at her friend's house. She testified that her private parts, legs, and thighs were sore and that she was hurting in her vaginal and abdominal area. S.B.'s testimony about her physical symptoms, when coupled with the testimony of the other witnesses, provides circumstantial evidence of penetration, which is an element of both rape by sexual intercourse and by deviate sexual activity.

Although Marshall asserts that there was no evidence that his pants were down or that he had an erection, this assertion is inconsistent with the testimony as Moody, Dickerson, and Giles all testified that they saw Marshall with his pants down, and Giles testified that Marshall had an erection. Marshall also contends that there "are a myriad of reasonable possibilities of what [Marshall] could have been doing between [S.B.'s] legs inconsistent with sexual intercourse." Marshall does not tell us what any of these possibilities might be, and this argument is not at all convincing given the testimony presented at trial. Here, the evidence gave rise

to more than a mere suspicion that either sexual intercourse or deviate sexual activity took place.

■ For his second point on appeal, Marshall argues that there was insufficient proof that S.B. was mentally incapacitated or physically helpless. Marshall's brief argument states that, although there were witnesses who testified that S.B. was passed out, there were also other witnesses who stated that she was responsive. "Physically helpless" means that a person is unconscious, physically unable to communicate lack of consent, or rendered unaware that the sexual act is occurring. Ark. Code Ann. § 5-14-101(6). Here, there was ample testimony that S.B. was at times unconscious, inebriated, "out of it," unable to stand, unable to walk, and unable to sit on the couch without falling off. There was also testimony that S.B. had consumed approximately twelve shots of alcohol in a twenty-minute period. Thus, given that this court only considers evidence that supports the verdict and that the determination of a witness's credibility is for the jury, *see Clem, supra,* the evidence is sufficient to prove that the sexual activity occurred between Marshall and S.B. while she was rendered physically helpless.

Affirmed.

ROBBINS and NEAL, JJ., agree.