Karen R. Baker, Justice, dissenting. Because the Confrontation Clause encompasses more than a hearsay analysis and because even “interrogation techniques” are subject to a confrontation-clause analysis, I respectfully dissent. The majority errs in concluding that statements made by persons who are not subject to cross-examination do not violate the Confrontation Clause of the United States Constitution as long as those statements are contained within questions posed by law enforcement officers engaged in interrogation. Swain was convicted for her role in the murder of Ronnie Bradley. Three other men were also charged in connection with Bradley’s murder, James Patton, Anthony Alan (“Alan”) Swinford, and Timothy Swinford. Only one of these men, Alan, testified during Swain’s.trial. However, the jury heard statements made by the other two men during Swain’s trial. Statements made by James and Timothy were used by law enforcement officers during their 1, (¡interrogation of Swain. Although the police officer who interrogated Swain testified at Swain’s trial, neither James nor Timothy did. Despite this fact, the majority concludes that the Confrontation Clause was not violated because the statements were not hearsay and were part of an “interrogation technique.” The Sixth Amendment’s Confrontation Clause provides that, “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” Crawford v. Washington, 541 U.S. 36, 42, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). This bedrock procedural guarantee applies to both federal and state prosecutions. Id. (citing Pointer v. Texas, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)). First, the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused. Id. at 50, 124 S.Ct. 1354. In Crawford, the Court discussed the infamous English trial of Sir Walter Raleigh: The most notorious instances of civil-law examination occurred in the great political trials of the 16th and 17th centuries. ’ One such was the 1603 trial of Sir Walter Raleigh for treason. Lord Cobham, Raleigh’s alleged accomplice, had implicated him in an examination before the Privy Council and in a letter. At Raleigh’s trial, these were read to the jury. Raleigh argued that Cobham had lied to save himself: Cobham is abso-, lutely in the King’s mercy; .to excuse me cannot avail him; by accusing me he may hope for favour. 1 D. Jardine, Criminal Trials 435 (1832). Suspecting that Cobham would recant, Raleigh demanded that the judges call him to appear, arguing that [tjhe Proof of the Common Law is by witness and jury: let Cobham be here, let him speak it. Call my accuser before my face.... 2 How. St. Tr., at 15-16. The judges refused, id., at 24, and, despite Raleigh’s protestations that he was being tried by the Spanish Inquisition, id., at 15, the jury convicted, and Raleigh was sentenced to death. Crawford, 541 U.S. at 44, 124 S.Ct. 1354. The Crawford Court made it clear that, even under a narrow standard, statements taken by police officers in the course of interrogations are testimonial. |nM at 52, 124 S.Ct. 1354. In Crawford, the Court squarely rejected the view that the Confrontation Clause applies of its own force only to in-court testimony, and that its application to out-of-court statements introduced at trial depends upon the rules of evidence. Id. at 50-51, 124 S.Ct. 1354 (quotations omitted). Two years after Crawford, the Court outlined a two-step process for determining- whether statements made during police interrogations were testimonial or nontestimonial in nature. Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. Id. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. Id. During the interrogation, Swain stated that she was not driving her car when the victim was dumped out of the car. The interrogating officers stated, “[James] has said, at that point you was drivin’ are you sure ’cause [James] has nothin’ to gain.” After Swain denied ever hitting or having physical contact with the victim, the officers stated, “James says that you sit there and was yellin’ at ’em when they had a seatbelt around his neck, in the very back.” These statements from James were admitted to the jury without any opportunity for Swain to confront James prior to or during her trial. The trial court recognized that these statements were “basically hearsay,” a characterization that the majority dismisses as being used in the “colloquial sense,” but went on to instruct that the statements were not considered for |12the truth of the matter asserted. The problem lies in the fact that the circuit court, and the majority, have analyzed only one layer of hearsay. The majority focuses on the truth of the matter asserted from the perspective of the interrogating officer. By stopping there, the majority fails to take into account whether the statement was offered for the truth of the matter asserted when it was made by James to the officer. Undoubtedly, the officers confronting Swain with James’s statements framed those statements as true. The majority, however, fails to acknowledge or analyze the layer of hearsay between James and the officers.[1] Instead, the majority cloaks the underlying hearsay in the protective layer of the officer’s “interrogation technique,” and calls the whole bundle nonhearsay. Even assuming that the officer’s “interrogation technique,” constitutes nonhearsay — a conclusion I do not agree with — when a statement presents hearsay within hearsay, each layer of hearsay must satisfy both an exception to the hearsay rules and the Confrontation Clause in order to be admissible. See, e.g., Cook v. State, 350 Ark. 398, 86 |13S.W.3d 916 (2002).[2] It is not sufficient to say that the officer did not make the statement for the truth of the matter asserted or that Swain had the opportunity to cross-examine the officer. For, as the Court noted in Crawford, even Sir Walter Raleigh was perfectly free to confront those who read the statements of witnesses against him— but that is no substitute for direct confrontation in the presence of those charged with determining guilt. Crawford, 541 U.S. at 51,124 S.Ct. 1354.' Moreover, Crawford and its progeny are concerned with more than hearsay. If the Confrontation Clause does nothing more than prohibit hearsay, then the bedrock constitutional guarantee is reduced to nothing more than an evidentiary rule, a position the Court firmly rejected in Crawford. Id. at 51, 124 S.Ct. 1354 (“Leaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices.”). The statements allowed by the majority — which were given during the course of a police interrogation, collected for the purpose of criminal prosecution and not because of an ongoing emergency, and presented in [ 14court absent the opportunity to confront the declarant — are the archetypal testimonial statements the Court has found to violate the Confrontation Clause. Yet, somehow, by removing these statements one degree and covering them in the wrapping of a nonhearsay “interrogation technique,” the majority finds no error. Hearsay, even if covered by non-hearsay, remains hearsay. I acknowledge that this court has held that where a statement is admitted for a legitimate, nonhearsay purpose, that is, not to prove the truth of the assertions therein, the statement is not hearsay under the traditional rules of evidence and the nonhearsay aspect raises no confrontation-clause concerns. Dednam v. State, 360 Ark. 240, 248, 200 S.W.3d 875, 880 (2005); However, where the danger of unfair prejudice from the jury’s consideration of hearsay statements outweighs the probative value of the nonhearsay purpose, those statements are not admissible. See United States v. Churchwell, 465 Fed. Appx. 864, 865 (11th Cir.2012) (noting that statements by out-of-court witnesses to law enforcement officials “may be admitted as non-hearsay if they are relevant to explain the course of the officials’ subsequent investigative actions, and the probative value of the evidence’s non-hearsay purpose is not substantially outweighed by the danger of unfair prejudice caused by the impermissible hearsay use of the statement”); United States v. Benitez-Avila, 570 F.3d 364, 371 (1st Cir.2009); Baker, 432 F.3d at 1212 (finding that the prejudice stemming from the hearsay use of newspaper articles substantially outweighs the probative value of the articles’ non-hearsay use to establish the publicity surrounding a murder); United States v. Slaughter, 386 F.3d 401, 403 (2d Cir.2004) (“Testimony containing hearsay may be admissible not for its truth but as 11sbackground information if (1) ‘the non-hearsay purpose by which the evidence is sought to be justified is relevant,’ and (2) ‘the probative value of this evidence for its non-hearsay purpose is [not] outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the declarant’s statement.’ ”); State v. Miguel a, 305 Conn. 562, 46 A.3d 126, 135 (2012) (“Even if the court deems evidence relevant for a limited, nonhearsay purpose, such evidence is still inadmissible when its probative value is outweighed by the danger of unfair prejudice.”); Craig v. State, 630 N.E.2d 207, 211 (Ind.1994) (“If the fact sought to be proved under the suggested non-hearsay purpose is not relevant, or it is relevant but its danger of unfair prejudice substantially outweighs its probative value, the hearsay objection should be sustained.”). In this case, the danger of prejudice from the jury’s consideration of the hearsay statement as proof of what it asserted far outweighed the proper probative value of the evidence, which was nil.[3] Under the majority’s approach, any statement can be admitted at trial without providing the defendant with the opportunity to confront the declarant as long as the statement passes through a police officer engaged in an interrogation. I cannot agree that this ^(¡satisfies the Confrontation Clause. I would reverse and remand for a new trial in light of the fact that Swain’s right to confront the witnesses against her was violated by the introduction of hearsay statements relayed to officers by James and then introduced at trial under the guise of an “interrogation technique.” Hart, J., joins. . The majority contends that it need not reach the issue of whether the statements made by James to the officers constitutes hearsay because Swain did not argue that point before this court. Respectfully, Swain argued that the admission of James’s statements via the officers’ interrogation violated her right to confront the witnesses against her. In her brief, Swain pointed out specific statements made by the officers during her interrogation that included statements made by third parties. She argued that the officers were "simply repeating out-of-court, testimonial statements by codefendants that were not previously cross-examined by defense counsel,” and that “presenting a co-defendant’s confession and accusatory statements through an interview with Swain is impermissible under the rationales in Douglas and Bruton." Clearly, Swain argued that the statements from James to the officers violated her right to confront the witnesses against her. Understanding the nature of those statements is part of a complete Confrontation Clause analysis and does not constitute making the argument for her.' . The majority finds that the officer's relaying of statements made by Jones constitutes non-hearsay because the purpose was not to establish the veracity of the nontestifying co-defendant’s statements but, instead, to give context to Swain’s responses. Other jurisdictions have held that a law enforcement officer’s testimony that explicitly paraphrases the words of others constitutes "pure hearsay.” See United States v. Shiver, 414 F.2d 461, 463 (5th Cir. 1969) (stating that a detective’s testimony that his investigation "revealed” that a certain car was stolen was "pure hearsay, since he could not have known the facts of his own knowledge”); see also United States v. Baker, 432 F.3d 1189, 1206 (11th Cir.2005) (finding that a police officer's testimony that a named informant, who did not testify at trial, identified the defendant as the shooter was “unquestionably hearsay,” even though the officer did not explicitly paraphrase the words of others, because the only conceivable explanation for how the officer discovered the information was through listening to the statements of others). Here, the officer's source of knowledge was James’s statements. Consequently, I do not agree that the officer’s paraphrasing of those statements necessarily constitutes nonhearsay, and I do not agree that Swain’s reliance on Douglas and Bruton is misplaced. . The majority does little to weigh the prejudicial versus probative value of the statements at issue in this case. Instead, the majority seems to accept the notion that the statements had to be admitted for context and to demonstrate that Swain’s answers changed throughout the interrogation. During the interrogation, Swain first stated that there was a fight between the victim, Allen, and Timothy in her vehicle but that she and James went back to her house, and that Allen and Timothy put the victim in their truck and left. At first, Swain denied being in the vehicle when the victim was thrown out. Later, she stated that "[Tim] or [Allen] was driving [when the victim was thrown out of the car] and I was sittin’ in the passenger side.” Finally, she stated "I'm not 100% sure who was drivin' when ... I drove some, I didn’t drive some.” Even without the hearsay statements by James, the changes in Swain's answers throughout the interrogation are easy to identify, making the probative value of James’s statements very low, at least for the nonhearsay purposes identified by the majority.